# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

FANE LOZMAN,

      *Plaintiff*,

v.

CITY OF RIVIERA BEACH, FLORIDA

      *Defendant*.

Case No.:

**JURY TRIAL DEMANDED**

## COMPLAINT

Fane Lozman, by and through his undersigned attorneys, in accord with the Federal Rules of Civil Procedure, alleges (in a short and plain nature, cf. Fed. R. Civ. P. 8), the following:

## NATURE OF THE ACTION

1. This is an action to recover damages from the City of Riviera Beach, Florida, ("City"), for the taking of Lozman's private property without just compensation.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. §1983.

3. Venue is proper before the United States District Court for the Southern District of Florida because the private property taken by the City is located within Palm Beach County and therefore it is within the jurisdiction of the West Palm Beach Division of this Court. 28 U.S.C. § 1391(b)(2).

## THE PARTIES

4.      Fane Lozman is a former United States Marine Corps officer. He moved to the City of Riviera Beach in March of 2006.

5.      The City is a municipal corporation in Palm Beach County, Florida.

## FACTUAL ALLEGATIONS

6.      In February 2014, Lozman purchased a parcel of land within the City at 5101 North Ocean Drive ("Lozman Parcel" or "Parcel"). The Parcel is 7.76± acres in size, is located on Singer Island, about two miles north of the Palm Beach Inlet; most of it lies within the Lake Worth Lagoon ("Lake").

7.      The legal boundaries of the Lozman's Parcel, per the September 2021 Palm Beach County Property Records card is:  22/23-42-43, N 300 FT OF S 3464.8 FT OF GOV LT 1 LYG W OF SR 703 & SUBMRG LANDS LYG BET N & S BOUNDARIES.

8.      In 1924, the State of Florida, acting thorough the Trustees of the Internal Improvement Trust Fund (TIITF), sold 311± acres via TIITF Deed 17,146 ("TIITF Deed"). The Lozman Parcel is within the lands conveyed by that TIITF Deed. The TIITF Deed expressly states that the conveyance was made pursuant Chapter 7304, of the Acts of 1917, Laws of Florida.

9.      As a matter of law, the TIITF Deed conferred the right to bulkhead and fill the property that it conveyed subject only to compliance with Section 1290 of the General Statutes of 1906, which is currently codified as Fla. Stat. § 309.01.

10. Pursuant to the rights conferred by similar TIIFT conveyances, more than eighty percent (80%) of the frontage along the Lake shore has been bulkheaded and filled.[1]

11. Out of the 311 acres conveyed by the TIITF Deed, approximately 160 acres have been dredged, bulkheaded and filled.

12. Until recently, all of the land conveyed by the TIITF Deed was zoned for residential development and all parts of it that have not yet been filled, including Lozman's Parcel, were zoned "RS-5." The RS-5 designation allows for development of single-family homes with a density of no more than five units per acre.

13. Consistent with the City's historical zoning, all of the filled portions of the lands conveyed by the TIITF Deed have been developed for residential use.

14. In 1982, the City adopted Riviera Beach Code of Ordinances ("RB Code") Section 31-118 (modified in 1989), which provides in part:

> Property development standards. The property development standards in the RS-5 single-family dwelling district are as follows: (1) Minimum property size: 8,000 square feet, *except any lake, pond, wetland, marsh, lagoon, estuary, bottomland, etc., that is filled after December 6, 1989, shall require a **minimum dry lot size of one acre***. (Emphasis supplied).

15. When Lozman purchased the Parcel, he expected that it could be developed for use as single-family residential lots meeting or exceeding the one-acre minimum dry lot size requirement.

---

[1] In its natural state the Lake was approximately 21 miles long and up to one mile wide.

16. Despite Lozman's expectation as to the highest and best use for his Parcel, his intent was to use it for his floating home, a use consistent with his first United States Supreme Court victory against the City.[2]

17. Lozman sued the City in February 2016, (Lozman v. City of Riviera Beach, 15th Judicial Circuit Court, Palm Beach County, Case No.: 2016CA001527), filing a petition for a writ of mandamus to have a street address assigned to the Lozman Parcel.

18. In mid-2016, Lozman brought his floating home to the Parcel and moored it there.

19. Contemporaneously, Lozman sought and obtained a Homestead designation for the Parcel from the Palm Beach County Tax Assessor's Office pursuant to Fla. Stat. § 196.031.

20. In November 2016, the Court entered an order granting Lozman's petition and ordered the City to assign a street address to the Lozman Parcel.

21. After the street address was assigned, 5101 North Ocean Drive, Lozman installed a mailbox and started receiving his mail.

22. In 2018, a City zoning official, Jeffrey Gagnon, told Lozman that he was going to see to it that Lozman's mail delivery was terminated and that Lozman would never receive any permits for his Parcel.

23. Shortly after Mr. Gagnon's statement the United States Postal Service stopped delivering mail to Lozman's Parcel. Upon inquiry, the local Post Office advised Lozman service had been terminated at the City's request.

---

[2] See Lozman v. City of Riviera Beach, 568 U.S. 115, 133 S. Ct. 735 (2013).

24. Despite Mr. Gagnon's statement, Lozman sought permits in furtherance of his use of his Parcel.

25. The City's chief building official determined that Lozman was entitled to a permit for electrical service improvements and issued him a permit for temporary service in the spring of 2019. Shortly after this permit was issued, the City fired its chief building official.

26. In the fall of 2020, the new chief building official told Lozman to install a permanent power poll and move his electrical service from the temporary structure to the permanent poll.

27. On October 7, 2020, over the objection of Lozman and other affected TIITF Deed parcel owners, the City Council adopted Ordinance No. 4147, which changed the zoning for their properties from RS-5 to "Special Preservation". This ordinance is now codified as RB Code sections 31-521 through 31-523.

> Sec. 31-522 – Use Regulations provides:
> (a) Uses permitted. The following uses are permitted in the SP special preservation district:
> (1) Private residential fishing or viewing platforms and docks for non-motorized boats may be permitted subject to the following regulations:
> a. Platforms and docks shall not extend outward past the mean low water line.
> b. Construction must be fully achievable from an on-shore location.
> c. Permits must be obtained from DEP and/or all other applicable regulatory agencies.
> (2) Mitigation land banks.
> (3) Preservation land.

(b)  Special exception. The following uses may be permitted in the SP special preservation district:

   (1) None.

(c) Uses prohibited. The following uses shall be prohibited in the SP special preservation district:

   (1) Any use not specifically stated as a use permitted within this section.

     (Ord. No. 4147, § 2, 10-7-20)

28.    After the City downzoned the Parcel, the City notified Palm Beach County Property Appraiser of the zoning change. As a result, Lozman's homestead designation for the Parcel was terminated.

29.    In early 2021, Lozman installed a permanent power pole on the Parcel and made arrangements in anticipation of moving the service from the temporary structure to the permeant poll.

30.    Similarly, Lozman attempted to submit a permit for water service and was told by the City's Utility Department that the City would not accept a permit application.

31.    Lozman also contracted with Martin Fence Company to construct a boundary fence for his uplands. The City denied the fence permit application that the company had submitted on Lozman's behalf and thereby deprived Lozman of the ability to exclude the public from access to his Parcel.

32.    In February, 2021, the City advised Lozman that he could not have a permit for permanent electrical service and that his permit for temporary electrical service had been terminated.

33. By its actions described above, the City has stripped Lozman's Parcel of all economically viable uses.

## COUNT I
### TAKING WITHOUT JUST COMPENSATION

34. Lozman realleges the averments made in paragraphs 1 through 33 above as if fully set forth herein.

35. All conditions precedent to this action have either occurred, have been waived and/or have been otherwise satisfied.

36. The City has taken Lozman's Parcel.

37. The City has an obligation to pay Lozman just compensation for his Parcel but it has not.

38. Damages for a taking include the fair market value for the land based on the highest and best use supported by reasonable expectations on the date of the taking, interest from the date of the taking, cost of suit and attorney fees.

WHEREFORE, Plaintiff, FANE LOZMAN, requests that this Court enter an order awarding Lozman a money judgment for damages together with interest thereon, costs of this action, reasonable attorney fees and all other relief as the Court may deem appropriate.

/
/
/
/
/
/
/
/
/
*This space intentionally blank*

**JURY TRIAL DEMANDED**

Plaintiff respectfully requests that the amount of his damages be tried by jury.

Respectfully submitted,

/s/ *James D. Ryan*
James D. Ryan (Fla. Bar no. 0976751)
jdr@ryanlawgroup.net
sue@ryanlawgroup.net
Ryan Law Group, PLLC
636 US Highway One, Suite 110
North Palm Beach, FL  33408
Tel: (561) 881-4447

/s/*Ian Samuel*
Ian Samuel
ian@stemonique.com
Ste. Monique Appellors, LLC
2200 Colorado Ave., Suite 512
Santa Monica, CA 90404
Tel: (917) 803-8609

/s/*Edward A. Weinhaus*
Edward A. Weinhaus
Ste. Monique Appellors, LLC
10859 Picadily Sq. Dr.
Creve Coeur, MO  63146
Tel: (314) 580-9580
coach@appelors.com

/s/*Kerri L. Barsh*
Kerri L. Barsh (Fla. Bar no. 443840)
barshk@gtlaw.com
Greenberg Traurig, LLP
333 SE 2nd Ave., Suite 4400
Miami, FL  33131
Tel: (305) 579-0772

*Attorneys for Fane Lozman*