# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 14, 2024

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

FILED BY ___JG___ D.C.
Nov 14, 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Appeal Number: 23-11119-AA
Case Style: Fane Lozman v. City of Riviera Beach, Florida
District Court Docket No: 9:22-cv-80118-DMM

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

Enclosure(s)

MDT-1 Letter Issuing Mandate

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-11119

_____

FANE LOZMAN,

                                                  Plaintiff-Appellant,

*versus*

CITY OF RIVIERA BEACH, FLORIDA,

                                                  Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:22-cv-80118-DMM

_____

JUDGMENT

Case 9:22-cv-80118-DMM   Document 212   Entered on FLSD Docket 11/14/2024   Page 3 of 18
USCA11 Case: 23-11119     Document: 78-2     Date Filed: 11/14/2024     Page: 2 of 2

2                                                                    23-11119

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: October 16, 2024

For the Court: DAVID J. SMITH, Clerk of Court

ISSUED AS MANDATE: November 14, 2024

[PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 23-11119

_____

FANE LOZMAN,

                                                       Plaintiff-Appellant,

*versus*

CITY OF RIVIERA BEACH, FLORIDA,

                                                       Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:22-cv-80118-DMM

_____

2           Opinion of the Court                    23-11119

Before WILLIAM PRYOR, Chief Judge, and LUCK and HULL, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether a property owner's complaint that a city's comprehensive plan and ordinance caused a taking of his property is ripe for judicial review. Fane Lozman owns a parcel of submerged land and upland in the City of Riviera Beach, Florida. After the city enacted a comprehensive plan and ordinance that restricted development, Lozman sued Riviera Beach on the ground that the city deprived his parcel of all beneficial economic use or value without just compensation. *See* 42 U.S.C. § 1983. The district court granted summary judgment for Riviera Beach. Yet Lozman has not applied for a permit, variance, or rezoning from Riviera Beach to understand the "nature and extent" of permitted development on his land. Because Lozman has not received a final, written denial of an application for the development of his land from Riviera Beach, his claim is not ripe for judicial review. So we vacate and remand with instructions to dismiss his complaint without prejudice for lack of subject-matter jurisdiction.

## I. BACKGROUND

In 2014, Fane Lozman purchased property in the City of Riviera Beach, Florida. A title defect prevents Lozman from establishing the dimensions of his property. But the district court approximated that he owns 7.75 acres total—7.55 acres of submerged land

Case 9:22-cv-80118-DMM   Document 212   Entered on FLSD Docket 11/14/2024   Page 6 of 18
USCA11 Case: 23-11119   Document: 76-1   Date Filed: 10/16/2024   Page: 3 of 13

23-11119                Opinion of the Court                3

within the Lake Worth Lagoon and 0.20 acres of upland. Only a sliver of Lozman's property is above water.

More than 20 years before Lozman purchased his parcel, the City of Riviera Beach adopted a comprehensive plan governing development in the city. The 1991 comprehensive plan created a "Special Preservation Future Land Use" designation which "preclude[d] any development of [s]ubmerged [l]ands . . . to the maximum extent permissible by law." But the comprehensive plan was amended in 2010 to permit the development of "[p]rivate residential fishing or viewing platforms and docks for non-motorized boats." The sole exception to the plan's development restrictions is the "savings clause," which provides that the plan "shall not be construed nor implemented to impair or preclude judicially determined vested rights to develop or alter submerged lands." In 2021, the plan was amended to create a density restriction for savings clause properties, only allowing "a density of one unit per 20 acres" for those properties that meet the exception.

Lozman's property has retained the "Special Preservation Future Land Use" designation under the comprehensive plan since 1991. But when Lozman purchased his parcel in 2014, the property bore an inconsistent zoning designation that allowed the development of single-family homes. This discrepancy persisted until July 8, 2020, when Riviera Beach adopted Ordinance 4147 to create a matching special preservation zoning district. The ordinance's restrictions on development mirror the comprehensive plan's limitations for special preservation zones. The ordinance allows the

Case 9:22-cv-80118-DMM   Document 212   Entered on FLSD Docket 11/14/2024   Page 7 of 18
USCA11 Case: 23-11119   Document: 76-1   Date Filed: 10/16/2024   Page: 4 of 13

4                      Opinion of the Court                  23-11119

development of residential fishing and viewing platforms and docks. And the only exception is for those properties with "judicially determined vested rights to develop or alter submerged lands." But because the ordinance pre-dated the 2021 plan amendment, the ordinance's "savings clause" does not include the density restriction.

Lozman says that when he purchased the parcel, he "expected that it could be developed for use as single-family residential lots." Lozman purchased the property in 2014 for $24,000. But he produced an appraisal valuing the property at $49,833,500 as of October 7, 2020. This valuation depends on Lozman maximizing the property's "highest and best use"—bulkheading and filling the submerged water to create "up to eight one-acre parcels." The appraisal was also "based on the hypothetical condition that permits could be granted for bulkhead and fill."

But Lozman has not yet acquired—or applied for—federal or state permits to develop his property. Indeed, Lozman has endured federal and state enforcement actions for the unauthorized development of his parcel. When Lozman secured a floating home on his property with concrete blocks, both the United States Army Corps of Engineers and the Florida Department of Environmental Protection instituted enforcement actions against him for unauthorized modification of the Lagoon.

Lozman does not contest that a federal navigational servitude prohibits the development of his submerged property without a permit from the Corps. The Rivers and Harbors Appropriation

Case 9:22-cv-80118-DMM   Document 212   Entered on FLSD Docket 11/14/2024   Page 8 of 18
USCA11 Case: 23-11119   Document: 76-1   Date Filed: 10/16/2024   Page: 5 of 13

23-11119                Opinion of the Court                5

Act of 1899 prohibits the excavation, filling, or modification of the channel of any "navigable water" of the United States without the permission of the Corps. *See* 33 U.S.C. § 403. Because the Lake Worth Lagoon is a "navigable water," Lozman's submerged parcel is subject to the Rivers and Harbors Act.

The United States pursued an enforcement action against Lozman in June 2021 for building structures in the Lagoon without authorization in violation of the Rivers and Harbors Act. The district court stayed that proceeding while Lozman sought a permit from the Corps. But Lozman did not provide the information requested by the agency's order, so the Corps never issued a permit. The district court granted the Corps's motion for summary judgment, and the resolution of that enforcement action is pending appeal.

The Florida Department of Environmental Protection instituted a similar action against Lozman in December 2020, alleging that the concrete blocks constituted an unauthorized filling of surface waters within the Lagoon. A Florida state court ordered the removal of the structures, and they were removed less than a month later. In June 2022, the state court entered a consent judgment ordering Lozman not to fill or deposit any material on the property until he obtained a permit or exemption from the Department. But Lozman has not yet obtained such a permit or exemption from the Department.

Nor has Lozman applied for any other federal or state permit to develop his land. Lozman says that he intends to put his

Case 9:22-cv-80118-DMM Document 212 Entered on FLSD Docket 11/14/2024 Page 9 of 18
USCA11 Case: 23-11119 Document: 76-1 Date Filed: 10/16/2024 Page: 6 of 13

6                            Opinion of the Court                       23-11119

"replacement floating home" on a "dock on [his] property." But he has never applied for a permit for a dock—a permitted use under Ordinance 4147—from the Corps or the Department of Environmental Protection. Nor has Lozman proposed any plans to develop his property to Riviera Beach.

Lozman argues that "the denial of such permits is not the only way that a land-use plan can be 'applied' to a particular landowner." Instead, Lozman asserts that "Riviera Beach will not allow him to live on his property, provide electrical service to it, [or] permit the construction of a fence around it." Riviera Beach revoked Lozman's temporary electricity permit "due to [his] failure to identify any proposed use for the property." It also denied Lozman's application for a fence "due to a refusal by [Lozman] to provide [required] application material." Lozman has not established any causal connection between Ordinance 4147 and the denial of his permits other than their sequential timing.

Lozman brought this lawsuit alleging that the comprehensive plan and ordinance deprived him of all economically beneficial or productive use of his parcel. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992). The district court granted summary judgment for Riviera Beach because Lozman did not have any right to fill his submerged land under federal and state law; he was not denied all economically productive or beneficial uses of his land; and he did not plead a ripe *Penn Central* regulatory taking claim.

Case 9:22-cv-80118-DMM   Document 212   Entered on FLSD Docket 11/14/2024   Page 10 of 18
USCA11 Case: 23-11119   Document: 76-1   Date Filed: 10/16/2024   Page: 7 of 13

23-11119                Opinion of the Court                7

## II. STANDARD OF REVIEW

"We review *de novo* questions concerning our subject matter jurisdiction, including standing and ripeness." *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006) (emphasis added).

## III. DISCUSSION

The foundation for the exercise of federal courts' jurisdiction is Article III of the Constitution, which provides that the judicial power "shall extend" to certain "Cases" and "Controversies." U.S. CONST. art. III, § 2. As a result, "'[f]ederal courts are courts of limited jurisdiction'" and "'possess only that power authorized by the Constitution and statute.'" *United States v. Rivera*, 613 F.3d 1046, 1049 (11th Cir. 2010) (alteration adopted) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Article III "restricts the ability of courts to review cases and controversies that are not ripe." *Carver Middle Sch. Gay-Straight All. v. Sch. Bd. of Lake Cnty.*, 842 F.3d 1324, 1329 (11th Cir. 2016).

"The ripeness doctrine keeps federal courts from deciding cases prematurely and protects them from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Rivera*, 613 F.3d at 1050 (alteration adopted) (citations and internal quotation marks omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (citation and internal quotation marks omitted). "Even when a ripeness question in a particular case is prudential, [a court] may raise it on [its] own motion, and cannot be bound by the wishes of the

Case 9:22-cv-80118-DMM   Document 212   Entered on FLSD Docket 11/14/2024   Page 11 of 18
USCA11 Case: 23-11119   Document: 76-1   Date Filed: 10/16/2024   Page: 8 of 13

8                        Opinion of the Court                    23-11119

parties." *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993) (citation and internal quotation marks omitted).

The Supreme Court has held that a takings claim challenging the application of a land-use regulation is not ripe for judicial review "until the government entity charged with implementing the regulation[] has reached a final decision regarding the application of the regulation[] to the property at issue." *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Twp. of Scott*, 588 U.S. 180 (2019); *accord S. Grande View Dev. Co. v. City of Alabaster*, 1 F.4th 1299, 1305–06 (11th Cir. 2021). "[A] landowner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation." *Palazzolo v. Rhode Island,* 533 U.S. 606, 620 (2001). Because precedents "uniformly reflect an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it," a claim under *Lucas* requires a final decision on the "extent of permitted development" on the land in question. 505 U.S. at 1011 (citation and internal quotation marks omitted).

Neither the comprehensive plan nor the ordinance here constitutes a "final decision" sufficient to satisfy the ripeness requirement. Until a local government decides how it intends to apply a broad, locality-wide "regulation to a specific piece of property owned by the [owner]," there is not a "final decision." *See S. Grande View*, 1 F.4th at 1307 (discussing *Williamson Cnty.*, 473 U.S. 172, and

Case 9:22-cv-80118-DMM   Document 212   Entered on FLSD Docket 11/14/2024   Page 12 of 18
USCA11 Case: 23-11119     Document: 76-1     Date Filed: 10/16/2024     Page: 9 of 13

23-11119               Opinion of the Court                    9

*Eide v. Sarasota County*, 908 F.2d 716 (11th Cir. 1990)). Because Lozman has not applied for a permit, variance, or rezoning from either the comprehensive plan or ordinance, he has not received a final decision from Riviera Beach on how either regulation would apply to the development of his parcel.

We have consistently held that a comprehensive plan is not a "final decision" sufficient to satisfy the ripeness requirement. When a landowner challenged a comprehensive plan without requesting a rezoning, in *Eide v. Sarasota County*, we held that, before "challeng[ing] the County's *application* of the sector plan to his property, [the landowner] must first demonstrate that the sector plan has been *applied* to his property." 908 F.2d at 724. We reached a similar conclusion in *Reahard v. Lee County*, when we held that the landowners' takings claim "could not have ripened, if ever, until" the landowners received a final decision from the board of commissioners on their variance application. 30 F.3d 1412, 1415–16 (11th Cir. 1994).

The same reasoning applies here. The comprehensive plan alone cannot constitute a final decision on Lozman's property. That the comprehensive plan includes a material exception permitting development underscores that the plan alone is not a final decision precluding the development of Lozman's property. Because he has not applied for a permit, variance, or rezoning from Riviera Beach on the application of the comprehensive plan to his property, Lozman has not yet received a final decision on the comprehensive plan's application to his property.

An ordinance is rarely a "final decision." Ordinarily "no 'final decision' [exists] until an aggrieved landowner has applied for at least one variance to a contested zoning ordinance." *Reahard*, 30 F.3d at 1415 (citing *Williamson Cnty.*, 473 U.S. at 186). But we have sometimes considered a "targeted" zoning ordinance a final decision. *S. Grande View*, 1 F.4th at 1306–08. When a city enacted a specific ordinance that "targeted *precisely* and *only*" the developer's property, we held in *South Grande View* that the developer's claim was ripe despite his failure to apply for a variance. *Id.* (emphasis added). Because "there was no ambiguity as to how a general plan would be applied to a specific project—the zoning ordinance itself was the [c]ity's final decision on the matter." *Id.* at 1307.

Unlike in *South Grande View*, the ordinance here was not a "targeted" ordinance that *"precisely* and *only"* targeted Lozman's property. *Id.* (emphasis added). Riviera Beach adopted the ordinance to cure the inconsistent land designation between the comprehensive plan and zoning ordinance. The ordinance applied to properties across Riviera Beach. And the application of the ordinance—and its exception—to Lozman's property remains unknown because he has not sought a permit to develop his land. Because Riviera Beach's ordinance was a "general plan . . . that only coincidentally ended up affecting a discrete portion" of Lozman's property, the ordinance was not a final decision on his parcel. *Id.* at 1306–07.

Nor would it have been futile for Lozman to seek a final decision from Riviera Beach. Although we have sometimes exempted

Case 9:22-cv-80118-DMM   Document 212   Entered on FLSD Docket 11/14/2024   Page 14 of 18
USCA11 Case: 23-11119    Document: 76-1    Date Filed: 10/16/2024    Page: 11 of 13

23-11119               Opinion of the Court                    11

landowners from seeking a final decision where "it would [have] be[en] futile for the plaintiff to pursue a final decision," *id.* at 1308 n.12 (citation and internal quotation marks omitted), the futility exception does not excuse Lozman's failure to apply for a final decision from Riviera Beach. The futility exception may excuse the "repeated submission of development plans where the submission would be futile." *Eide*, 908 F.2d at 726–27. For example, when a developer failed to reapply to the same commission that had previously denied his development permit, we held that the developer's appeal would have been futile. *See Resol. Tr. Corp. v. Town of Highland Beach*, 18 F.3d 1536, 1547 (11th Cir. 1994). Because "no uncertainty exist[ed] regarding the level of development the [commission] would permit," we decided that "the reapplication [process] would not have served its intended purpose." *Id.*; *see also Corn v. City of Lauderdale Lakes*, 816 F.2d 1514, 1515–16 (11th Cir. 1987) (holding that an application for an additional variance would have been futile, since the developer's site plans were revoked and building permit rejected after the city passed ordinances barring development).

Unlike in *Resolution Trust Corp.*, applying for a variance, rezoning, or permit for development would not have required Lozman to reapply to the same council that had previously denied his application. Riviera Beach has not received any application from Lozman to develop his land. Nor has it preemptively denied one. The electrical permit was revoked *because* Lozman failed to provide any proposed use for the property. In other words, Lozman's failure to submit development plans resulted in the denial of his

12                    Opinion of the Court                    23-11119

permit for electricity. Lozman's application for development would not have been a "futile" repeated application.

We have also held that the futility exception may exempt a plaintiff from applying for a variance when no viable variance is available. For example, in *South Grande View*, Alabama law permitted only variances that ensured that "the spirit of the ordinance shall be observed." 1 F.4th at 1308 n.12 (citation and internal quotation marks omitted). Because the ordinance in *South Grande View* prohibited development on "*precisely* and *only*" the developer's property, *id.* at 1307 (emphasis added), no variance permitting development could fall within "the spirit of the ordinance," *id.* at 1308 n. 12 (internal quotation marks omitted).

This appeal is distinguishable. Riviera Beach's development code empowers a special magistrate to grant applications for variances so long as the ordinance does not prohibit the use. RIVIERA BEACH, FLA., CODE § 31-42(d) (2014). And the ordinance here contains an exception permitting development. It would not have been futile for Lozman to pursue this exception to understand the nature and extent of permitted development for his *Lucas* claim.

The permitted uses and exception in Ordinance 4147 amply support the necessity of a final decision from Riviera Beach before a court determines whether Lozman was denied "all economically beneficial or productive use of [his] land." *Lucas*, 505 U.S. at 1015. The ordinance allows two forms of development for which Lozman could have applied to understand the "nature and extent of [his] permitted development." *Id.* at 1011. The regulations permit

Case 9:22-cv-80118-DMM   Document 212   Entered on FLSD Docket 11/14/2024   Page 16 of 18
USCA11 Case: 23-11119    Document: 76-1    Date Filed: 10/16/2024    Page: 13 of 13

23-11119               Opinion of the Court                    13

"[p]rivate residential fishing or viewing platforms and docks for non-motorized boats." And the ordinance's "savings clause" exempts "judicially determined vested rights" from the limitations of the regulations.

We have not held that a property owner who has not applied for *any* permit, variance, or rezoning to develop his land may utilize the futility exception. And we will not do so here. Because Lozman has failed to apply for a permit to develop his land, we cannot know the extent of the economic damage, if any, caused by Riviera Beach's comprehensive plan or ordinance.

Lozman asks us to resolve his dispute prematurely. The extent of permitted development is unknown. Lozman never applied for a permit for development from Riviera Beach. Because Lozman has never received a final, written denial of his application for the development of his land from Riviera Beach, his claim is not ripe for judicial review.

## IV. CONCLUSION

We **VACATE** the judgment and **REMAND** with instructions to **DISMISS** Lozman's complaint without prejudice for lack of subject-matter jurisdiction.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 16, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 23-11119-AA
Case Style: Fane Lozman v. City of Riviera Beach, Florida
District Court Docket No: 9:22-cv-80118-DMM

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in the clerk's office within the time specified in the rules. **A petition for rehearing must include a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** See 11th Cir. R. 35-5(k) and 40-1.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion